UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SAURO D. ESTEVEZ-FIGUEREDO, :
:
        Petitioner, :    Civ. No. 18-16430 (PGS)
:
v. :
:
UNITED STATES OF AMERICA, :    **OPINION**
:
        Respondent. :
:

**PETER G. SHERIDAN, U.S.D.J.**

**I.    INTRODUCTION**

    Petitioner, Sauro D. Estevez-Figueredo ("Petitioner" or "Estevez-Figueredo"), is a federal prisoner proceeding *pro se* with a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the majority of Petitioner's § 2255 motion is denied and a certificate of appealability shall not issue on the claims that are denied. This Court will conduct an evidentiary hearing on one of Petitioner's claims out of an abundance of caution.

**II.    BACKGROUND**

    On February 7, 2016, Petitioner was charged with two counts of conspiracy to distribute narcotics. (*See* Crim. No. 17-186 ECF 1).[1] Petitioner made his initial appearance on February 8, 2016. (*See id.* ECF 7). Counsel was appointed to represent Petitioner at that time. (*See id.*). Starting February 16, 2016 thru April, 2017, the government and Petitioner, through his counsel, agreed to continuances as plea negotiations were ongoing. (*See id.* ECF 30, 38, 43, 50, 52, 55, 58, 60). Petitioner though appealed the last pre-indictment continuance on April 6, 2017. (*See id.*

---

[1] This opinion cites to the record in both Petitioner's criminal action, Crim. No. 17-186, and this civil action. Where this Court cites to documents in the criminal record, the criminal docket number is cited. Where this Court cites to documents in this civil action, no civil action number is cited.

ECF 62). That appeal was ultimately dismissed by the Third Circuit on July 28, 2017 because the order was not final, and Petitioner failed to meet the requirements of the collateral order doctrine. (*See id.* ECF 66).

On May 18, 2017, Petitioner was indicated on four counts. Count One charged Petitioner with conspiracy to distribute and possess with intent to distribute controlled substances. Counts Two and Three charged Petitioner with distribution and possession with intent to distribute controlled substances. Count Four charged Petitioner with possession with intent to distribute controlled substances. (*See id.* ECF 61).

On November 7, 2017, Petitioner entered a plea agreement whereby he pled guilty to Count One of the Indictment. (*See id.* ECF 78). The plea agreement provided that whether Petitioner was entitled to a minor role or safety valve sentence reduction was yet to be decided. (*See id.*)

On April 17, 2018, this Court conducted a sentencing hearing. At that hearing, this Court rejected Petitioner's argument that the minor role reduction applied. (*See id.* ECF 81 at 19). Additionally, the safety valve sentence reduction was determined not to apply as because Petitioner did not make a safety valve proffer. (*See id.* at 21). Ultimately, this Court sentenced Petitioner to 120 months imprisonment – the statutory mandatory minimum. (*See id.* at 27). Petitioner did not file a direct appeal from his judgment of conviction.

In November, 2018, this Court received Petitioner's § 2255 motion. (*See* ECF 1). He raises the following ineffective assistance of counsel claims in his § 2255 motion:

1. Failure to object to pre-indictment delay ("Claim I")
2. Agreeing to continuances without informing or advising Petitioner ("Claim II")
3. Not visiting Petitioner enough ("Claim III")

4. Failure to consult or discuss plea offers with Petitioner ("Claim IV")

5. Making no effort to seek minor role or safety valve sentence reductions ("Claim V")

6. Failing to make any objections to the Pre-Sentence Report ("PSR") ("Claim VI")

7. Providing no advice regarding an appeal.

Respondent filed a response in opposition to Petitioner's § 2255 motion. Petitioner did not file a reply. The matter is now ripe for adjudication.

### III. LEGAL STANDARD

A motion to vacate, set aside or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief if "the court finds . . . [t]here has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (citing R. Governing § 2255 Cases R. 4(b)). A District Court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte*, 865 F.2d at 62). The Third Circuit has stated that this standard creates a "'reasonably low threshold for habeas petitioners to meet.'" *Id.* (quoting *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001))). Accordingly, this Court abuses its discretion "if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." *Id.* (citing *McCoy*, 410 F.3d at 134).

## IV. DISCUSSION

As indicated above, all of Petitioner's claims assert that his counsel was ineffective. The Sixth Amendment guarantees effective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted). "In the context of pleas a [petitioner] must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). "[W]hen evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, [the petitioner is required] to show that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Id.* (citations omitted). In the context of sentencing, prejudice requires a reasonable probability that, but for counsel's error, the result of the sentencing proceeding would have been different - *i.e.*, more favorable to the defendant. *See United States v. Polk*, 577 F.3d 515, 520 (3d Cir. 2009); *see also United States v. Otero*, 502 F.3d 331, 337 (3d Cir. 2007) (*"*The prejudice prong is satisfied when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing[.]") (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice

suffered by the defendant as a result of the alleged deficiencies…. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice... that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

As detailed in more depth below, Petitioner makes no contention in his § 2255 motion that he would not have pled guilty and would have insisted on going to trial had counsel purportedly performed competently. Thus, he fails to show the requisite prejudice on many of his claims at the outset. *See generally Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Grippo v. United States*, No. 14-4577, 2016 WL 7223316, at *7 (D.N.J. Dec. 12, 2016) (finding petitioner failed to show prejudice where he does not contend he would have not pled guilty and would have insisted on going to trial if competently advised by counsel); *Matusiewicz v. United States*, No. 11-0394, 2014 WL 3362365, at *6 (D. Del. July 2, 2014) (petitioner fails to show prejudice on claim that counsel failed to negotiate a more favorable plea where he does not assert that he would not have pled guilty and would have proceeded to trial but for counsel's conduct) (citing *United States v. Jones*, No. 12-2046, 2014 WL 2587008, at *6 (E.D. Pa. June 10, 2014)).

A. Claim I

In Claim I, Petitioner states that counsel was ineffective when he failed to object to the fifteen-month delay between his arrest in February, 2016 and the indictment which was entered in May, 2017. He asserts that due to the stress and anxiety, he gained weight and that his blood pressure and cholesterol levels increased. (*See* ECF 1 at 5-6). While not completely clear, presumably Petitioner is arguing that counsel should have argued that the indictment should have been dismissed because his due process rights were violated due to the fifteen-month delay between his arrest and being indicted.

> "[T]he Due Process Clause of the Fifth Amendment protects defendants against oppressive pre-indictment delay within the applicable limitations period." *United States v. Sebetich,* 776 F.2d 412, 430 (3d Cir.1985). To prevail on a claim of unconstitutional pre-indictment delay, the defendant must prove that (1) "the government intentionally delayed bringing the indictment in order to gain some advantage over him" and (2) "this intentional delay caused the defendant actual prejudice." *United States v. Ismaili,* 828 F.2d 153, 167 (3d Cir.1987).

*United States v. Staton*, 605 F. App'x 110, 113 (3d Cir. 2015).

Petitioner fails to show that he is entitled to relief on this ineffective assistance of counsel claim. He makes no argument whatsoever that the government delay in bringing the indictment was to gain some advantage over him. Rather, it appears as if the indictment was delayed due to continuances so that the parties could at least in part continue to converse about a possible plea agreement. Accordingly, Petitioner fails to show that he was prejudiced under *Strickland* by counsel's failure to bring a motion to dismiss due to pre-indictment delay because he has not shown, let alone allege, intentional delay on the part of the government. Accordingly, Claim I is denied.[2]

B. Claim II

Somewhat related to Claim I, Petitioner alleges in Claim II that counsel did not inform him, nor did he agree to the several post-arrest continuances consented to by the government and Petitioner's counsel. This purportedly includes the period after Petitioner was indicted. Petitioner though fails to show *Strickland* prejudice with respect to this claim. Indeed, he fails to show that the outcome of his proceeding would have been different to a reasonable probability had counsel not agreed to these continuances. Furthermore, as noted above, with respect to his guilty plea,

---

[2] Because Petitioner failed to allege and show intentional delay on the part of the government in bringing the indictment, this Court need not analyze whether Petitioner's allegations of his deteriorating health due to stress and anxiety constitutes actual prejudice to satisfy a Fifth Amendment due process claim due to pre-indictment delay.

Petitioner fails to even allege that he would not have pled guilty and would have insisted on going to trial but for counsel's purported ineffectiveness in agreeing to these continuances. Accordingly, Claim II is also denied.

C. Claim III

In Claim III, Petitioner states that counsel only visited him when he came to visit other inmates and did not spend any time with Petitioner discussing his case or what his legal options were. For the following reasons, Petitioner fails to show that he is entitled to relief pursuant to *Srickland* on this claim.

As the Supreme Court has explained,

> the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible....
>
> ... [T]he barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable [however]. In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

*Blackledge v. Allison,* 431 U.S. 63, 73–75 (1977); *see also United States v. Erwin,* 765 F.3d 219, 230 (3d Cir. 2014) (applying *Blackledge*); *United States v. Stewart,* 977 F.2d 81, 84 (3d Cir. 1992) ("The ritual of the colloquy is but a means toward determining whether the plea was voluntary and knowing. A transcript showing full compliance with the customary inquiries and

admonitions furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences")

Petitioner's assertion in his § 2255 motion that counsel did not adequately explain his options or advise him how the criminal justice system worked is contradicted by what he told this Court during the plea hearing. Indeed, Petitioner testified then that he had enough time to discuss his case with his counsel. (*See* ECF 5-2 at 5). Furthermore, Petitioner also testified that counsel had explained to him the immigration consequences of his plea. (*See id.* at 13). Petitioner also testified that counsel had reviewed the plea agreement and its terms with him and that he had no questions about it. (*See id.* at 18). His conclusory statement now that counsel did not explain his options or advise him how the criminal justice system worked is insufficient to overcome *Blackledge*'s presumption based on Petitioner's solemn declarations in open court during the plea hearing. *See Grippo*, 2016 WL 7223316, at *9 (conclusory allegation attorney did not explain strength and weaknesses of plea agreement insufficient to overcome strong *Blackledge* presumption based on solemn on the record admission by petitioner). Accordingly, Petitioner fails to show that counsel's actions fell below an objective standard of reasonableness within this claim.

Furthermore, Petitioner fails to show *Strickland* prejudice. He does not show how the outcome of his proceedings would have been different had counsel visited him more while he was incarcerated. Additionally, to the extent that Petitioner may be alleging the purported lack of advice by counsel rendered his plea involuntary, he does not even allege that he would have not pled guilty and would have insisted on going to trial but for counsel's purported ineffectiveness. Accordingly, for these reasons, Claim III is denied.

D. <u>Claim IV</u>

In Claim IV, Petitioner asserts that his counsel was ineffective during the plea negotiation process. More specifically, Petitioner states that counsel never discussed any pleas with him nor did he give him any advice about the positives or negatives of a plea. (*See* ECF 1 at 6-7). Seeming to then contradict his own argument as stated above, Petitioner then states that counsel told him about a 97-108 month plea along with an 83-month plea. Finally, Petitioner states that counsel even suggested at one point that Petitioner might only get a 63-78 month sentence. (*See id.* at 7). Petitioner states though that counsel never gave him any advice on how to proceed with these pleas.

The United States Supreme Court has held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *See Missouri v. Frye*, 566 U.S. 134, 145 (2012). "[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place during the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Id.* at 146. Accordingly, deficient performance occurs when counsel fails to communicate formal plea offers to the defendant. *See id.* at 146-47. Once that is satisfied, a petitioner still must show prejudice. In *Frye*, the Supreme Court noted that:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

10

*Frye*, 566 U.S. at 147 (citing *Glover v. United States*, 531 U.S. 198, 203 (2001). As one court has noted:

> A petitioner ... who seeks to establish a claim of ineffective assistance of counsel in the context of plea bargaining, consequently must make a double showing – (1) that the prosecutor extended the plea offer and (2) that his or her attorney either failed to communicate the offer to him or misadvised him concerning the advantages and disadvantages of the offer so as to cause the non-acceptance of an otherwise beneficial outcome by a favorable guilty plea.

*Compean v. United States*, No. 12-0730, 2013 WL 6196517, at *7 (W.D. Ky. Oct. 18, 2013) (citing *Lint v. Prelesnik*, No. 09-10044, 2011 WL 3241840, at *11 (E.D. Mich. July 29, 2011); *Robinson v. United States*, 744 F. Supp. 2d 684, 696 (E.D. Mich. 2010)); *report and recommendation adopted by*, 2013 WL 6196533 (W.D. Ky. Nov. 26, 2013). Thus, whether a defendant is ever offered a formal plea offer is a vital factor in determining whether counsel is deemed to be ineffective because mere informal plea discussions are not enough to trigger counsel's duty to inform. *See Shnewer v. United States*, No. 13-3769, 2016 WL 867461, at *15 (D.N.J. Mar. 7, 2016) (citing *Hull v. United States*, No. 15-0123, 2015 WL 5009998, at *2 (W.D. Wis. Aug. 15, 2015)) ("The Court made clear in *Frye*, that duty applies only when the plea offer is a 'formal one.' The Court has never held that defense counsel can be found constitutionally ineffective for failing to tell their clients about informal discussions they have with the government about possible plea offers."); *Mavashev v. United States*, No. 11-3724, 2015 WL 1508313, at *9 (E.D.N.Y. Mar. 31, 2015) (noting that there is a significant distinction between formal plea offers and informal plea offers); *United States v. McCall*, No. 00-0505, 2014 WL 2581353, at *3 (N.D. Cal. June 9, 2014) ("In reality, there is either a formal plea offer, or in its absence, mere discussions between counsel. Mere conversations are rarely recorded and always

subject to interpretation and mis-remembering. It would be a near-impossible burden to require defense counsel to update defendant on each twist and turn in informal conversations. And it would be impossible for the government to reconstruct and prove each such twist and turn in the communication, much less prove that defense counsel passed on the twists and turns to their client.... Therefore, to transmogrify mere conversation into an "informal plea offer" and then to further say it must be communicated to an accused on pain of Section 2255 relief would be a nifty sleight of hand.") (citations omitted); *United States v. Merlino*, Crim. No. 99-10098, 2014 WL 793987, at *4 (D. Mass. Feb. 28, 2014) ("A majority of courts ... have held that a formal plea offer must consist of something more than preliminary oral communications.") (citations omitted); *Montgomery v. United States*, No. Crim. 07-00036, 2013 WL 6196554, at *4 (W.D. Ky. Nov. 26, 2013) ("Although there has been little exposition regarding the precise definition of the term "formal offer," the Court clearly intended to distinguish "offers" made during the course of preliminary negotiations from those made once negotiations have concluded. In other words, while there is no touchstone for assessing the formality of an offer, there must at the very least be some basis for concluding that the alleged offer could have been accepted or rejected without further discussion or negotiation."); *Compean*, 2013 WL 6196517, at *7 ("The threshold issue for the Court therefor is whether the Government ever extended a formal plea offer to the Defendant in the first instance.") (citing *Guerrero v. United States*, 383 F.3d 409, 417 (6th Cir. 2004); *Strollo v. United States*, No. 05-0113, 2007 WL 2071940, at *3 (N.D. Ohio July 16, 2007))).

Courts tend to look at several factors to determine whether the prosecutor extended a formal plea offer. Indeed:

> One court has noted that plea agreements "are essentially contracts" and that "for a contractual offer to exist, it must contain

> 'sufficiently definite terms to enable [a] fact finder to interpret and apply them." *United States v. Petters*, 986 F. Supp. 2d 1077, 1082 (D. Minn. 2013) (quoting *Neb. Beef, Ltd. v. Wells Fargo Bus. Credit, Inc.*, 470 F.3d 1249, 1251 (8th Cir. 2006)). Thus, in *Petters*, the District of Minnesota determined that a formal plea offer had not been extended because there was "an absence of any discussion of the charges to which Petters would acknowledge guilt, the factual basis for a plea, or restitution or forfeiture issues." *Id.* A court in this Circuit has similarly stated that, "it is clear that an oral discussion of the sentencing range for a possible plea agreement that does not include an agreement on the charges to which the defendant will plead guilty and the facts that he will admit, does not constitute a formal plea offer." *Waters*, 2013 WL 3949092, at *8 (citing *Enright v. United States*, 347 F. Supp. 2d 159, 165 (D.N.J. 2004)).

*Shnewer*, 2016 WL 867461, at *16. In *Shnewer*, Judge Kugler determined that the petitioner failed to show that a formal plea offer had been made because of a lack of a discussion regarding the charges to which the defendant would have pled guilty to along with a factual basis for the plea. *See id.*

In this case, Petitioner fails to show that any formal offers were offered to him besides the one he ultimately agreed to. Petitioner does not allege that any of the purported pleas discussed to him by counsel had any discussion of what charge Petitioner would have to pled guilty to. Rather, they appear to consist only of informal discussions, which, based on Petitioner's own admissions in his filing, he indicates counsel told him about. Thus, to the extent that this claim could be read as counsel's failure to inform Petitioner about plea offers, the claim is conclusory and lacks merit.

Construed liberally, Petitioner may also be asserting that counsel failed to advise him about the formal plea agreement he was offered. However, this claim is belied by the record in this case. Indeed, during the plea hearing Petitioner stated as follows: (1) he had sufficient time to discuss the case with his attorney (*see* ECF 5-2 at 6); (2) counsel consulted him about the

immigration consequences of his plea (*see id.* at 12-13); (3) counsel reviewed the plea agreement with Petitioner (*see id.* at 18); and (4) Petitioner had no questions about the plea agreement. (*See id.* at 18). Petitioner offers no compelling reason for this Court to question the truthfulness of his statements under oath during the plea hearing. Accordingly, to the extent Petitioner argues within Claim IV that counsel failed to adequately advise him on the plea agreement, the claim is without merit.

Therefore, for the foregoing reasons, Claim IV is denied.

E. Claim V

In Claim V, Petitioner first claims that counsel was ineffective for failing to pursue a minor role reduction. As the sentencing hearing transcript makes clear, however, counsel strenuously argued for a minor role reduction in Petitioner's sentence. (*See* ECF 5-2 at 3-19). Thus, counsel was not ineffective because he in fact did argue for such a minor role sentence reduction.

Petitioner also argues within Claim V that counsel was ineffective because he did not discuss the safety valve sentence reduction with him. (*See* ECF 1 at 7). Petitioner states that had counsel done so, Petitioner would have discussed the details of his case with the government. Thus, according to Petitioner, he could have gotten the benefit of the safety valve, thereby qualifying him for a sentence below the statutory mandatory minimum 120-month sentence he received from this Court.

The safety valve sentence reduction from the United States Sentencing Guidelines ("U.S.S.G.") states as follows:

> Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if

14

> the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:
>
>> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
>> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>> (3) the offense did not result in death or serious bodily injury to any person;
>> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a). To qualify for a safety valve reduction, a petitioner is required to "not only ... admit the conduct charged, but [ ] also ... volunteer any information aside from the conduct comprising the elements of the offense." *United States v. Ishmael,* 469 F. App'x 86, 88 (3d Cir. 2012). Thus, Petitioner was required, in order to be eligible for safety valve sentencing, to "reveal a broad scope of information about the relevant criminal conduct to the authorities." *Id.; see also United States v. Claxton,* 766 F.3d 280, 305 (3d Cir. 2014).

      This Court did not consider the safety valve reduction as it was uncontested during the sentencing hearing that Petitioner never made a proffer to the government, thus did not satisfy

U.S.S.G. § 5C1.2(a)(5). Nevertheless, Petitioner states that he would have made a proffer to the government had he been so advised by counsel.

The issue of whether Petitioner would be entitled to a safety valve sentence reduction was left open in the plea agreement. Most notably, it was not determined whether Petitioner satisfied the first and fifth elements to warrant applying the safety valve. (*See* Crim. No. 17-186 ECF 78 at 9). Petitioner admitted though during the plea hearing that he reviewed the plea agreement with his attorney and that he had no questions about it. (*See* ECF 5-2 at 18). Furthermore, Petitioner's counsel provided this Court with what he states are contemporaneous notes made prior to sentencing which he states illustrates that he spoke to Petitioner about the safety valve. Indeed, one of these notes explicitly states that counsel explained to Petitioner about the safety valve (again) but that Petitioner was not interested in meeting with the government. (*See* ECF 5-4 at 21).

Petitioner's admissions during the plea hearing that counsel explained to him the plea agreement, as well as counsel's contemporaneous notes are certainly relevant pieces of evidence to show that Petitioner was in fact told about the safety valve by counsel, notwithstanding Petitioner's statements to the contrary in his § 2255 motion. Nonetheless, and out of an extreme abundance of caution, given that the credibility of Petitioner versus his former counsel may impact the outcome of this claim, this Court will an evidentiary hearing on whether counsel was ineffective by failing to discuss the safety valve with Petitioner.[3] Counsel will be appointed to represent Petitioner at the evidentiary hearing on this claim.

---

[3] The PSR indicates that had the safety valve been applied, Petitioner's offense level would have been 31. (*See* PSR ¶ 56.13b). This would have made his advisory guideline range 108-135 months. Accordingly, this Court cannot decide this claim on *Strickland*'s prejudice prong at this time because the bottom of the range is below the 120-month statutory minimum sentence. *See, e.g.*, *United States v. Batista*, 483 F.3d 193, 199 n.4 (3d Cir. 2009) (noting for safety valve to apply, advisory guideline range must be lower than the statutory minimum).

16

F. Claim VI

In Claim VI, Petitioner argues counsel was ineffective when he failed to make any objections to the PSR. Motions under § 2255 must allege sufficient factual detail to ground their claims. *See, e.g.*, *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000); *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988) (holding that a claim without any elaboration was insufficient to create a genuine issue for review under § 2255). A movant "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations." *Zettlemoyer v. Fulcomer*, 923 F.2d 284 298 (3d Cir. 1991). A court may dispose of "vague and conclusory allegations contained in a § 2255 [motion] ...without further investigation." *Thomas*, 221 F.3d at 437 (citation omitted).

Petitioner's allegations within Claim VI are vague and conclusory. He provides no specificity whatsoever as to what type(s) of objection(s) counsel should have made to the PSR. Accordingly, Claim VI is denied.

G. Claim VII

In Claim VII, Petitioner states that counsel gave him no advice regarding a possible appeal. (*See* ECF 1 at 7). Thereafter, he states though that counsel told him not to appeal because it would be denied. (*See id.*).

"Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores–Ortega,* 528 U.S. 470, 480 (2000). In reviewing the failure to file an appeal, the court should consider

"whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings...." *Id.*

At the outset, it should be noted that this is not a case where Petitioner is arguing that he told counsel to file an appeal, but counsel failed to do so. Rather, Petitioner's claim is that counsel should have provided more "advice" about whether to appeal. However, what "advice" Petitioner claims he should have received is lacking such that this claim appears to be vague and conclusory warranting dismissal. Furthermore, Petitioner's own admissions in his § 2255 motion indicate that counsel did provide Petitioner advice about an appeal as Petitioner states counsel recommended against filing an appeal.

The sentencing hearing transcript lends further support in denying this claim. Indeed, Petitioner did not object when counsel told this Court that he had discussed Petitioner's right to appeal with him. (*See* ECF 5-3 at 29). Finally, it bears repeating that this Court sentenced Petitioner to the 120-month mandatory minimum, below the advisory guidelines range of 138 to 165 months. Petitioner's § 2255 motion is unclear what claims he would have filed had he brought a direct appeal. Thus, at least with respect to the sentence Petitioner received, Petitioner provides no argument that this sentence was in error. Accordingly, for these reasons, Claim VII is denied.

V.      **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner

satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Petitioner has not met the standard for a COA on Claims I, II, III, IV, VI and VI as well as his argument within Claim V that counsel was ineffective for failing to argue that Petitioner was entitled to a minor role sentencing reduction. This Court reserves judgment on whether Petitioner is entitled to a COA on his argument within Claim V that counsel was ineffective for failing to advise Petitioner on the safety valve sentence reduction.

## VI. CONCLUSION

For the foregoing reasons, Claims I, II, III, IV, VI and VII as well as Petitioner's argument within Claim V that counsel was ineffective for failing to argue for a minor role sentencing reduction are denied. A COA shall not issue on these claims. This Court will conduct an evidentiary hearing on Petitioner's argument within Claim V that counsel was ineffective in failing to advise Petitioner about the safety valve sentencing reduction. Counsel will be appointed to represent Petitioner at the evidentiary hearing on this claim. An appropriate order will be entered.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

June 18, 2020